IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Donald Earl Eaddy, II,   #294169, | ) | Civil Action No.: 3:10-1693-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Warden John R. Pate of ACI, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, a state prisoner proceeding *pro se*, initiated this suit by filing his [Docket Entry 1] Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus ("§ 2254 Petition"). Petitioner is currently incarcerated at Allendale Correctional Institution in Fairfax, South Carolina.

On September 16, 2010, Respondent filed his [Docket Entry 10] Motion for Summary Judgment, along with a return and memorandum in support, [Docket Entry 11]. Because Petitioner is proceeding *pro se*, the court entered an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on September 17, 2010, advising Petitioner of the motion for summary judgment procedures and the possible consequences if he failed to adequately respond. Petitioner timely filed responses in opposition to the summary judgment motion on September 23, 2010 and October 14, 2010.[1] *See* Response I [Docket Entry 14]; Response II [Docket Entry 15].

The court received Petitioner's [Docket Entry 17] Motion to Amend his § 2254 Petition on March 9, 2011. The Magistrate Judge denied that motion by way of a written order dated June 24, 2011. *See* June 24 Order [Docket Entry 19].

This matter is now before the court with the [Docket Entry 20] Report and Recommendation

---

[1] Filing dates under *Houston v. Lack*, 487 U.S. 266 (1988) (stating that a prisoner's pleading is deemed filed at the moment of delivery to prison authorities for forwarding to district court).

("R & R") of United States Magistrate Judge Joseph R. McCrorey[2] also filed on June 24, 2011. In his R & R, the Magistrate Judge recommended that the court should grant Respondent's summary judgment motion and dismiss the § 2254 Petition without an evidentiary hearing. *See* R & R at 9. Petitioner timely filed objections to the R & R. *See* Obj. [Docket Entry 25].

## Background

In October of 2002, Petitioner was indicted in Dorchester County, South Carolina, for "Child Abuse/Infliction of Great Bodily Harm upon a Child" and "Assault and Battery with Intent to Kill ['ABWIK']." *See* Appeal Record [Docket Entry 11-7] at 54-57. The purported victim was Petitioner's girlfriend's son. Thomas MacGregor represented Petitioner at trial. After a jury trial, Petitioner was convicted of the child abuse charge and assault and battery of a high and aggravated nature, a lesser included offense of ABWIK. *See id.* at 35-36.

After conviction, a direct appeal was filed on Petitioner's behalf by the South Carolina Office of Appellate Defense by way of an *Anders*[3] brief raising the following issue:

> The judge erred by refusing to direct a verdict acquitting Eaddy of inflicting great bodily injury upon a child.

*Anders* Brief [Docket Entry 18-1] at 4. Pursuant to procedure, Petitioner then filed his [Docket Entry 18-2] *Pro Se* Brief raising the following issue:

> The Trial Court lacked Subject-Matter Jurisdiction on the Indictments because the indictments was flawed; And Trial Counsel was Ineffective in failing to raise such flaw and in allowing appellant to go to trial on the Indictments.

*Pro Se* Brief [Docket Entry 18-2] at 2. The South Carolina Court of Appeals dismissed the appeal

---

[2] This matter was referred to Magistrate Judge McCrorey pursuant to 28 U.S.C. § 636 and Local Rule 73.02, D.S.C.

[3] *Anders v. California*, 386 U.S. 738 (1967).

on June 14, 2005. *See* Court of Appeals Opinion [Docket Entry 11-15]. Remittitur was issued on July 1, 2005. *See* Remittitur I [Docket Entry 11-16].

Petitioner filed an application for post-conviction relief ("PCR") on July 15, 2005. *See* Appendix ("App.") [Docket Entry 11-13] at 26. An amended PCR application was filed on May 23, 2007. *See id.* at 43. The PCR court held an evidentiary hearing on May 20, 2008, at which Petitioner was represented by Charles T. Brooks, III, Esquire. *Id.* at 61. On July 17, 2008, the PCR court issued an order dismissing Petitioner's PCR application. *Id.* at 121-36.

A petition for a writ of certiorari and an amended petition for writ of certiorari were then filed on Petitioner's behalf by the South Carolina Commission on Indigent Defense. *See* Petition for Writ [Docket Entry 11-17]; Am. Petition for Writ [Docket Entry 11-19]. The amended petition raised the following issue:

> The Americans with Disabilities Act prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of that person's disability. Was it ineffective assistance of counsel for trial counsel not to object to the Solicitor's request to have Eaddy's wheelchair removed from the courtroom because the wheelchair "would invoke some sort of sympathy from the jury" and when Eaddy protested to the judge that he cannot get around without it?

Am. Petition for Writ at 3. The South Carolina Supreme Court denied Petitioner's petition for a writ on May 14, 2010. *See* Supreme Court Letter [Docket Entry 11-21]. Remittitur was issued on June 2, 2010. *See* Remittitur II [Docket Entry 11-22].

### Habeas Grounds for Relief

In the present § 2254 Petition, Petitioner raises the following grounds:

**Ground One:**   The Judge erred by refusing to direct a verdict aquitting [sic] Eaddy of inflicting bodily injury upon a child.

    **Supporting Facts:**   See Addendum Number 1 (pp 5A-5B). Also pgs.

3

                165-(line24) to 175-(line)13 of transcript–appendix.

**Ground Two:**      Ineffective assist[ance] of trial coun[s]el for failure to object to the solic[i]tor's argument on the wheelchair in courtroom.

                **Supporting Facts:**    See Addendum Number 2 (pg. 6A-6B-6C) & Appendix pg. 418-L9 to 427, L3.

§ 2254 Petition at 5, 9.

## Standard of Review

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## Habeas Corpus Standard of Review

Petitioner brought this action pursuant to 28 U.S.C. § 2254. Section 2254 states in pertinent part that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id* § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08. In order to grant habeas relief under the "unreasonable application" clause, the court must determine that the state court's decision was not only incorrect, but also was "objectively unreasonable." *Id.* at 409-11.

**Discussion**

I.     Ground One (Sufficiency of Evidence)

Petitioner asserts that the trial judge "erred by refusing to direct a verdict aquitting [sic] [him]

5

of inflicting great bodily injury upon a child." § 2254 Petition at 5. The Magistrate Judge "conclude[d] that evidence was sufficient to support the conviction." R & R at 7. Petitioner objects, and argues that "the record of the states doctor testimony . . . reveal[s] great bodily injury never occurred." Obj. at 2.

A federal habeas petitioner is entitled to relief on a challenge to the sufficiency of the "evidence adduced at the trial" only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). In conducting such a review of the state court record, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Stated another way, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . [is] . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. Finally, in conducting such an inquiry, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

S.C. Code § 16-3-95(A) provides that "[i]t is unlawful to inflict great bodily injury upon a child." The trial court accurately instructed the jury on the essential elements of the crime of infliction of great bodily harm on a child as follows:

> 16-3-95(a) says it is unlawful to inflict great bodily injury upon a child. For purposes of this section, great bodily injury means bodily injury which creates substantial risk of death, or which causes serious or permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. This section may not be construed to prohibit corporal punishment or physical discipline which is administered by a parent or person loco parentis in a manner which does not cause great bodily injury upon a child.

Appeal Record [Docket Entry 11-7] at 20.

In his § 2254 Petition and Objections, Petitioner contends that the evidence in the state court record does not support a finding that "great bodily injury" occurred. Obj. at 2. Specifically, Petitioner argues that the evidence does not show that the victim's injuries were "life-threatening [or] potentially fatal." § 2254 Petition at 7. Upon review, however, the undersigned agrees with the Magistrate Judge that, "[u]nder the Jackson analysis, . . . [the] evidence was sufficient to support the conviction." R & R at 7.

At Petitioner's trial, the State began by presenting the testimony of the victim who was the ten year old son of Petitioner's girlfriend at the time. *See* Appeal Record [Docket Entry 11-2] at 67, 69. The victim described for the jury a continuous course of abuse by Petitioner that included prolonged calisthenics,[4] spankings and beatings by hand, switch, and with a spatula,[5] head injuries,[6] and choking.[7] When the victim screamed for help, "[Petitioner] would put duct tape on [his] mouth." *Id.* at 79. The victim further testified that Petitioner hit him with Petitioner's walker on occasion, and that Petitioner hit the victim in the side with his hand and "then [Petitioner] pulled [the victim's] hair and slammed [the victim] down on [his] back." *See id.* On one occasion, the victim injured his foot when he jumped from a window trying to run away. *See id.* at 75. After running away for a final time, the victim testified that he was hospitalized for three days after being

---

[4] For example, the victim testified that the calisthenics included, among other things, remaining in the "pushup position" and "jumping jacks." Appeal Record [Docket Entry 11-2] at 69-70, 72.

[5] *See* Appeal Record [Docket Entry 11-2] at 72-73.

[6] The head injuries were caused, at least on one occasion, by Petitioner placing his hands on the side of the victim's head and then head-butting the victim. *See* Appeal Record [Docket Entry 11-2] at 77.

[7] The victim testified that "[Petitioner] would take [the victim] by his hands and choke [the victim] and put [the victim] up, mak[ing] [the victim's] head touch the ceiling." Appeal Record [Docket Entry 11-2] at 78.

discovered by police. *See* Appeal Record [Docket Entry 11-3] at 1-2.

As noted by the Magistrate Judge, a physician examined the victim after he was discovered by police, and numerous photographs depicting the victim's injuries were taken and presented to the jury at trial. *See* Appeal Record [Docket Entry 11-4] at 36-37. The examining physician used the photographs to detail the victim's injuries and condition to the jury at trial. The injuries depicted in the photographs were consistent with the abuse as described by the victim, including strangulation. *See*, *e.g.*, *id.* at 38-39 (physician noting that "blood vessel ruptures" were consistent with claims of "having been strangled"); *see also id.* at 43-45 (physician noting that injuries were consistent with use of a belt). The pictures also depicted that the victim's body was covered with bruises and abrasions. For example, the physician testified that the victim's buttocks contained a "hematoma," that was "black, blue, yellow, green, lots of different types of . . . colors, and it was tender to the touch and was swollen." *Id.* at 40. Ultimately, the doctor concluded that, to a reasonable degree of medical certainty, the injuries sustained by the victim put him at risk of "life threatening harm," and could be described as "great bodily injury" and "potentially fatal in nature."[8] *Id.* at 67-68.

The South Carolina Court of Appeals ultimately rejected Petitioner's argument that the trial court should have directed a verdict acquitting Petitioner on the charge of inflicting great bodily injury on a child. After conducting a *Jackson* analysis of the state court record, the undersigned concludes that the evidence was sufficient to support Petitioner's conviction. Thus, Petitioner is not

---

[8] In his R & R, the Magistrate Judge noted the following: "Counsel for [Petitioner] did not challenge the doctor's conclusions on cross-examination but concentrated on the possibility that the injuries were caused in ways other than those described by the victim. [Petitioner] also presented the testimony of two doctors, but they testified about [Petitioner's] trouble in walking and not about the injuries of the victim." R & R at 6 n.4. Petitioner did not dispute this finding of the Magistrate Judge in his Objections. Rather, Petitioner only argued generally that "the states doctor testimony . . . reveal[ed] great bodily injury never occurred." Obj. at 2.

entitled to habeas relief on this ground because he has failed to show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324.

## II.     Ground Two (Ineffective Assistance of Counsel)

In Ground Two, Petitioner contends that his trial counsel was ineffective for not opposing, or objecting to, the State's request that he be seated at counsel table in the chair provided, rather than in a wheelchair. *See* § 2254 Petition at 10. Petitioner also appears to contend that his trial counsel "even . . . attempted to hide the wheelchair from the view of the jurors." *Id.* at 11. In his R & R, the Magistrate Judge noted that "[t]his issue was raised in the PCR process and addressed by the PCR court."[9] R & R at 7. Ultimately, the Magistrate Judge concluded that "[e]ven if it was error not to argue in favor of the presence of the wheelchair, [Petitioner] did not show prejudice as he did, in fact, present two doctors who testified to his limitations." R & R at 9. Petitioner objected to this finding and recommendation.

Claims of ineffective assistance of counsel must be reviewed under the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must first show that the performance of counsel was deficient or "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* In meeting the second prong, a petitioner must show prejudice, in other words, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

---

[9] The court notes that the Magistrate Judge also indicated that Petitioner, in his petition for writ of certiorari, "argued that counsel should have based an objection on a violation of the Americans With Disabilities Act ("ADA")." R & R at 7. However, the Magistrate Judge thereafter found that Petitioner "offered no evidence or argument concerning an ADA violation" at the PCR hearing. While Petitioner mentions the ADA in his Objections, he fails to address the Magistrate Judge's conclusion that he failed to raise the issue during his PCR hearing.

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In cases brought under § 2254, "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. . . . Rather, . . . § 2254(d)(1) requires a habeas petitioner to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004) (internal quotations and citations omitted).

Here, at the beginning of the trial, the State requested that Petitioner sit at counsel table in a regular chair and not be allowed to sit in a wheelchair. *See* Appeal Record [Docket Entry 11-1] at 26. Petitioner's trial counsel agreed to the request, stating the following: "I'm going to have two doctors testify as to his health condition anyway, so it won't make any difference whether he's in a chair or in this chair, either way." *Id.*

After a hearing, the PCR court found that Petitioner had not shown that his trial counsel committed any error or that Petitioner was prejudiced by being seated in a chair at counsel table. *See* App. [Docket Entry 11-13] at 125-26. In so ruling, the PCR court noted that "Counsel [had] testified that the [Petitioner] was able to walk . . . [and] . . . also indicated that the jury was aware that the [Petitioner] used a wheelchair because the [Petitioner] testified he used a wheelchair." *Id.* at 125.

After reviewing Petitioner's objections, the undersigned concludes, as did the Magistrate Judge, that Petitioner has failed to show any prejudice stemming from his trial counsel's alleged errors–i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 694. Petitioner has failed

to show that the trial court would <u>not</u> have granted the State's request had his trial counsel objected,[10] nor has he shown that the outcome of his trial would have been different had he been allowed to be seated in his wheelchair.

Petitioner contends that if he would have been allowed to use his wheelchair in the courtroom, it would have shown the jury that he was not physically capable of committing the abusive acts described by the victim. However, upon review of the evidence presented at trial, the court concludes that the jury was made aware of Petitioner's physical limitations. As an initial matter, the victim himself testified regarding Petitioner's use of a walker. *See*, *e.g.*, Appeal Record [Docket Entry 11-2] at 79. More importantly, Petitioner's physical disability was a part of his defense. Petitioner himself testified regarding his disability. Specifically, Petitioner testified that he has injured discs in his spine from a previous fall, which "create[] a motion in [his] legs, called a spasticity." Appeal Record [Docket Entry 11-5] at 28. Petitioner further testified that he could not walk, and got around by use of a "walker" and "wheelchair." *Id.* at 29. In addition, Petitioner's trial counsel called two doctors to testify regarding Petitioner's physical limitations.[11] The first doctor testified that Petitioner had trouble getting around, and that he complained of "his neurologic

---

[10] As a matter of fact, the undersigned notes that before the trial court ordered Petitioner to be seated in a chair at counsel table, it indicated that it was its "normal practice of course to have the defendant seated at the table." Appeal Record [Docket Entry 11-1] at 27.

[11] The court does note that Petitioner argues in his Objections that his trial counsel also was ineffective for calling these two specific doctors. Petitioner contends that these two doctors had treated him on a limited basis, and that Petitioner "had 2 neurologists that [he] had been seeing for years that should ha[ve] been summoned to appear to testify for [him]." Obj. at 3. However, the court concludes this argument lacks merit for the same reasons his claim regarding the wheelchair fails. Petitioner has not shown prejudice stemming from any alleged error regarding these doctors. The two doctors that actually testified, as noted above, testified regarding Petitioner's physical limitations. There was also testimony in the record from Petitioner himself and the victim regarding Petitioner's physical disabilities. Thus, the court concludes that Petitioner has failed to show any prejudice as a result of these two doctors being called instead of Petitioner's neurologists.

disorder that . . . he got from a spinal cord injury or back injury." *Id.* at 75. The second doctor, a neurosurgeon, testified that he first saw Petitioner after Petitioner was referred by a neurologist who had been treating him for "spasticity." Appeal Record [Docket Entry 11-6] at 22. The neurosurgeon testified further that Petitioner had been having "trouble walking" due to his spasticity. *Id.* at 23. Based on all the above evidence that was presented to the jury regarding Petitioner's physical disability and limitations, the court concludes that Petitioner has failed to show any prejudice resulting from his wheelchair not being present in the courtroom.

Accordingly, because Petitioner has failed to show that there is a reasonable probability that the outcome of his trial would have been different had his trial counsel objected to the State's request regarding the wheelchair, Petitioner's ineffective assistance claim fails.

III.    Remaining Objections

The court does note that Petitioner, in his Objections, also makes several other arguments. For example, Petitioner asserts arguments regarding the insufficiency of his indictments, double jeopardy, and an illegal sentence. However, upon review, these arguments were not raised as grounds for relief in his § 2254 Petition. While Petitioner did move to amend his § 2254 Petition to include some of these additional grounds, the Magistrate Judge denied that Motion to Amend based on futility. *See* June 24 Order at 1-2. Petitioner did not appeal the Magistrate Judge's order. Thus, because these objections relate to grounds that are not raised in Petitioner's § 2254 Petition, they are overruled.

## Certificate of Appealability

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating

that reasonable jurists would find that the district court's assessment of the constitutional claim is debatable or wrong and/or by demonstrating that any dispositive procedural ruling by the district court is debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that Petitioner has failed to make "a substantial showing of the denial of a constitutional right."

### Conclusion

The court has thoroughly reviewed the entire record, including the R & R and Objections, and the applicable law. Having done so, the court finds that Petitioner has not shown that the State court decisions were contrary to, or an unreasonable application of, established Federal law, nor that they were based on an unreasonable determination of the facts. For the reasons stated above and by the Magistrate Judge, the court hereby overrules all of Petitioner's objections and adopts and incorporates by reference the Magistrate Judge's R & R. Accordingly, Respondent's Motion for Summary Judgment is **GRANTED**, and the § 2254 Petition is hereby **DISMISSED** *without an evidentiary hearing*.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

                                            s/R. Bryan Harwell
                                            R. Bryan Harwell
                                            United States District Judge

Florence, South Carolina
September 15, 2011